UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SYLVESTA COLLINS,            )
                             )
        Plaintiff,           )
                             )      CIVIL ACTION NO.
VS.                          )
                             )      3:11-CV-0179-G
CSA, LTD.,                   )
                             )
        Defendant.           )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant CSA, Ltd.("CSA") to dismiss one of the plaintiff's claims against it (docket entry 29). For the following reasons, the motion is granted.

### I. BACKGROUND

The plaintiff Slyvesta Collins ("Collins"), an African-American, worked as an employee for CSA in pest management on United States military bases in Kuwait. Plaintiff's First Amended Complaint and Jury Demand ("Complaint") ¶¶ 1, 9, 19, 20

(docket entry 22).  He was assigned to Camp Arifjan in Kuwait, at which Collins claims he was subjected to racially offensive comments.  *Id*. ¶ 10.  He further alleges that as a result of his complaints about these comments, he was transferred to Camp Beuhring, a "less desirable" base in Kuwait.  *Id*. ¶ 11.  Collins avers that further complaints also went unheeded, and that he was eventually passed over for a supervisory position because of his complaints about the racially offensive comments.  *Id*. ¶¶ 12, 13, 15, 16.  He contends that as a result of complaints about this behavior, Collins received a negative performance review, when "in fact his job performance had been excellent."  *Id*. ¶ 15.  Shortly thereafter, he contends, he was terminated on the basis of the negative performance review.  *Id*. ¶ 17.  In consequence, Collins maintains, CSA violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981").

CSA now moves to dismiss Collins' Section 1981 claim because the alleged discrimination occurred on a United States military base in Kuwait, arguing that Section 1981 does not apply extraterritorially.  Defendant CSA Ltd.'s Brief in Support of Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Motion") at 2-4 (docket entry 30).  In response, Collins argues that the Status of Forces Agreement ("SOFA") between the United States and Kuwait calls for the application of United States law.  Plaintiff's Response to Defendant CSA, Ltd.'s Rule 12(b)(6) Motion to Dismiss ("Response") at 3-4 (docket entry 32).  CSA asserts that SOFA

either does not apply to contractors in Kuwait or that the applicable United States law does not bring Collin's Section 1981 claim within the relevant statutory language. Defendant CSA, Ltd.'s Reply in Support of Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Reply") at 3 (docket entry 33).

## II. DISCUSSION

### A. Standard for Determination under Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." A motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994) (citations omitted).

The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting Wright & Miller, Federal Practice and Procedure § 1357), *cert. denied*, 459 U.S. 1105 (1983). Granting such a motion "is a 'precarious disposition with a high mortality rate.'" *Id.* (quoting *Barber v. Motor Vessel "Blue Cat,"* 372 F.2d 626, 627 (5th Cir. 1967)).

Before dismissal is granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant. *Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994) (citation omitted); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citations omitted); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).

B. <u>Extraterritorial Claims Under 42 U.S.C. § 1981</u>

Generally, extraterritorial claims may not be brought under a federal statute if no express language granting extraterritorial jurisdiction appears in the statute. As stated by the Supreme Court in *Equal Employment Opportunity Commission v. Arabian American Oil Company*, "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." 499 U.S. 244, 248 (1991) (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285 (1949)), *superseded by statute in* Civil Rights Act of 1991, Pub. L. No. 102-166, § 109(b), 104 Stat. 1078 (codified in 42 U.S.C. §2000e-1); see also *Small v. United States*, 544 U.S. 385, 388-89 (2005). The Court "look[s] to see whether 'language in the [relevant Act] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control.'" *Arabian American Oil*, 499 U.S. at 248 (quoting *Filardo*, 336 U.S. at 285). In *Arabian American Oil*, the Court held that Title VII did not apply to American

companies acting overseas, precisely because Congress did not explicitly include language extending Title VII's reach to foreign countries.  *Id.* at 250-51.  Although Congress has since amended Title VII to apply extraterritorially, *see* 42 U.S.C. § 2000e-1, the principles of law and statutory interpretation involved remain the same.

      Given the precedent above and the presumption that a statute is only intended to apply within the territorial jurisdiction of the United States, Collins has failed to persuade the court that Section 1981 applies in this case.  The relevant language in Section 1981(a) states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, [and to] give evidence. . . ."  The statute contains no suggestion of any kind that it should apply outside of the United States, or indeed, outside of the physical boundaries of any state or territory of the United States.  The language of the statute is best construed as limiting itself from international application.  See *Ofori-Tenkorang v. American International Group, Inc.*, 460 F.3d 296, 301 (2d Cir. 2006).  In fact, district courts that have considered the issue have found that Section 1981 does not confer extraterritorial jurisdiction.  See, *e.g.*, *Gallaspy v. Raytheon Technical Services Company*, No. EP-04-CV-0012-FM, 2005 WL 1902534, at *5-6 (W.D. Tex. Aug. 9, 2005), *aff'd on other grounds*, 211 Fed. Appx. 269 (5th Cir. 2006);

*de Lazzari Barbosa v. Merck & Co.*, No. Civ. 01-CV-2235, 2002 WL 32348281, at *2 (E.D. Pa. Mar. 11, 2002); see also *Ofori-Tenkorang*, 460 F.3d at 301.

Collins contends that the SOFA between the United States and Kuwait, which governs the presence of United States forces at Camp Arifjan and Camp Beuhring, brings United States military installations in Kuwait within United States "territory", as that term is used in Section 1981. Response at 3. On the other hand, CSA asserts that the research papers in support of this contention do not state that United States law generally applies to the bases, but rather that United States forces will be subject to United States law. Reply at 3; *see* KENNETH KATZMAN, CONG. RESEARCH SERV., RS 21513, KUWAIT: SECURITY, REFORM AND U.S. POLICY 9 (2005), *available at* http://www.fas.org/sgp/crs/mideast/RS21513.pdf. Problematically, the full SOFA between the governments of Kuwait and the United States, which was initially signed in 1991, has not been publicly disclosed, and it is impossible for the court to know with any certainty exactly what its provisions entail.[*] *See* R. CHUCK MASON, RL 34531, STATUS OF FORCES AGREEMENT (SOFA): WHAT IS IT, AND HOW HAS IT BEEN UTILIZED? 28 (2011), *available at* http://www.fas.org/sgp/crs/natsec/RL34531.pdf. As such, it cannot be a basis for holding that United States law applies to military contractors employed on United States bases in Kuwait.

---

[*] It appears that the U.S.-Kuwait SOFA is currently classified and has been since it was signed in 1991. As a result, the court is reluctant to infer that Katzman actually saw the agreement when writing his congressional report.

This discussion is, however, tangential to the issue of whether Congress intended United States military installations in foreign countries to fall within the definition of a United States state or territory under Section 1981. Analogizing under other precedent, the court concludes that Collins cannot bring a Section 1981 cause of action for conduct which occurs at an overseas United States military base. Cf. *Vermilya-Brown Co. v. Connell*, 335 U.S. 377, 388-89 (1948) (applying the Fair Labor Standards Act to a United States military base in Puerto Rico, which the Supreme Court construed to be within the meaning of the word "possessions" in that statute). But see *Arc Ecology v. U.S. Department of the Air Force*, 294 F. Supp. 2d 1152, 1158 (N.D. Cal. 2003) (holding that the Comprehensive Environmental Response, Compensation, and Liability Act's extension of jurisdiction to any "'U.S. territory or possession over which the United States has jurisdiction" did not include a United States military base located in the Philippines), *aff'd*, 411 F.3d 1092 (9th Cir. 2005). Although the limited number of cases available define no clear rule as to which jurisdictional words or phrases in statutes encompass military bases, the Supreme Court suggested in *Connell* that, "[u]nder such circumstances, our duty as a Court is to construe the word 'possession' as our judgment instructs us the lawmakers, within constitutional limits, would have done had they acted at the time of the legislation with the present situation in mind." *Connell,* 335 U.S. at 388. This language implies

that courts must make a best attempt to analyze the issue keeping in mind the purpose of the statute and intentions of the lawmakers who enacted the statute.

This leads to the conclusion that United States military bases abroad are not "within the jurisdiction of the United States" referred to in Section 1981(a). In that statute, the word "possession" does not even appear. *See generally* Section 1981(a). As discussed *supra*, Section 1981 only refers to United States states and territories, with no mention possessions or military bases. *Id.* The Civil Rights Act, now codified in Section1981, was originally passed in 1866 after the ratification of the Thirteenth Amendment. Civil Rights Act of 1886, ch. 31, § 1, 14 Stat. 27; Ann K. Wooster, *Actions Brought Under 42 U.S.C.A. §§ 1981-1983 for Racial Discrimination*, 164 A.L.R. FED. 483 (2000). Therefore, the statute's purpose does not provide a clear answer to the issue here. However, it is doubtful that Congress, when drafting the statute, acted with the intention to create causes of action that accrue on military bases on foreign soil, because Congress primarily was concerned with discrimination occurring within the United States. *See* Kenneth W. Biedzynski, *et al.*, *Section 1981 and employment*, 45A AM. JUR. 2D JOB DISCRIMINATION § 7 (2011). If, however, Congress had intended Section 1981 to be applied broadly in the peripheral margins of potential United States jurisdiction, then it could have explicitly done so or utilized the word "possessions" to broaden its meaning. As Section 1981 currently reads, it does not appear from the text that lawmakers would have done so "had they acted at

the time of the legislation with the present situation in mind." Therefore, the court concludes that Section 1981 affords Collins no right to relief in this case.

Even if the court accepts all of Collins' well-pleaded facts as true, he has failed to state a claim on which he can be granted relief under Section 1981.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion to dismiss Collins' Section 1981 claim against it is **GRANTED**.

**SO ORDERED**.

March 27, 2012.

                                                                    *A. Joe Fish*
                                                                    **A. JOE FISH**
                                                                    **Senior United States District Judge**